**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DONALD W. BROCK, SR.,
Plaintiff-Appellant,

v.                                                                                     No. 98-2127

WAL-MART STORES, INCORPORATED,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Rebecca B. Smith, District Judge;
Tommy E. Miller, Magistrate Judge.
(CA-97-1072-2)

Argued: October 28, 1999

Decided: January 12, 2000

Before NIEMEYER and WILLIAMS, Circuit Judges,
and HAMILTON, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Allan Donald Zaleski, WEISBERG & ZALESKI, Nor-
folk, Virginia, for Appellant. William Beverley Tiller, MORRIS &
MORRIS, P.C., Richmond, Virginia, for Appellee. **ON BRIEF:**
Michael Stephen Weisberg, WEISBERG & ZALESKI, Norfolk, Vir-
ginia, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Donald W. Brock, Sr., filed this negligence action against Wal-Mart Stores, Inc. for injuries sustained when he sat on a swing set, displayed at a Wal-Mart store, which collapsed. After the deadline for completing discovery, the district court denied Brock's request to serve a second set of interrogatories and a second request for documents and granted Wal-Mart's motion for summary judgment, concluding that Brock had failed to offer any evidence that Wal-Mart was negligent. We affirm.

I

During a shopping visit to a Wal-Mart store in Suffolk, Virginia, in March 1997, Brock sat with his daughter on the seat of a swing set on display. The seat collapsed causing Brock injury. The three- or four-inch screws holding the swing's chains pulled out apparently because they had been screwed into the wooden A-frame assembly only one-half inch.

The evidence showed that swing sets came to the Wal-Mart store unassembled and that Wal-Mart hired independent contractors to assemble them. There is no evidence, however, establishing who assembled the swing set in question and when it was assembled. A Wal-Mart store employee saw the swing set unassembled the day before the incident, and another employee saw it in the same condition four hours before the incident.

Brock sued Wal-Mart for negligence in state court, and Wal-Mart removed the case to federal court on diversity grounds. At a scheduling conference on December 16, 1997, the court ordered Brock to complete discovery by January 27, 1998, and set a trial date in April 1998. Two weeks before the end of the discovery period, Brock con-

2

ducted depositions of three Wal-Mart employees, during which he first learned that Wal-Mart hired outside companies to assemble its swing sets. He thereafter filed a motion to extend the discovery period in order to file a second set of interrogatories and a second request for production of documents. Wal-Mart objected to this discovery as untimely, and sometime later it filed a motion for summary judgment. At the hearing on these motions, Brock requested that the case be dismissed without prejudice because he wished to add the independent contractors as parties. The court denied this request, denied Brock's request for additional discovery, and granted Wal-Mart's motion for summary judgment. It ruled that (1) Wal-Mart's swing sets were assembled by independent contractors, (2) the question of liability reduced itself to what Wal-Mart knew or should have known about the dangerous condition of the swing set, (3) Wal-Mart did not know about the condition, and (4) no evidence had been offered regarding whether Wal-Mart should have known of the condition.

This appeal followed.

II

Applicable Virginia law is well-settled. Wal-Mart owed Brock the "duty to exercise ordinary care toward [him] as its invitee upon its premises" and to have its "premises in a reasonably safe condition for [his] visit." Colonial Stores Inc. v. Pulley, 125 S.E.2d 188, 190 (Va. 1962). In addition, Wal-Mart had the duty to remove "within a reasonable time" dangerous conditions that it created or which it "knew, or should have known, that other persons had [created]," and to warn Brock "of the unsafe condition if it was unknown to [him], but was, or should have been, known to [Wal-Mart]." Id.

Because there was no evidence in the record in this case that Wal-Mart caused the swing set's dangerous condition, Brock was left with proving that Wal-Mart had "either actual or constructive notice of the [dangerous swing set's] presence and failed to remove it." Winn-Dixie Stores, Inc. v. Parker, 396 S.E.2d 649, 651 (Va. 1990). Brock has failed to meet this burden.

First, Brock presented no evidence that if a Wal-Mart employee walked by the assembled swing set and looked at it, he should have

3

discovered that the swing set's screws were improperly inserted. An observer would have to know how much of the screw was inserted into the wood, and he would have to understand how much screw had to be inserted to make the swing set safe. There is no evidence that any Wal-Mart employee could have ascertained this from observation.

But even if a dangerous condition was observable, there is no evidence of how long it existed. It is fully consistent with the record in this case that an independent contractor assembled the swing set only moments before Brock sat on the swing, giving Wal-Mart no opportunity to eliminate the unsafe condition. See Colonial Stores, 125 S.E.2d at 190 (noting that in the absence of evidence, "it is just as logical to assume that [the dangerous item] was placed upon the floor an instant before the plaintiff struck it as it is to infer that it had been there long enough that the defendant should, in the exercise of reasonable care, have known about it"); see also Winn-Dixie, 396 S.E.2d at 651 (reciting the same principle quoted from Colonial Stores); Great Atlantic and Pacific Tea Co., Inc. v. Berry, 128 S.E.2d 311, 314 (Va. 1962) ("The [dangerous object] could have been dropped by a customer only minutes before the plaintiff stepped on it. To conclude otherwise would be to speculate or guess").

Brock's reliance on Certified T. V. and Appliance Co., Inc. v. Harrington, 109 S.E.2d 126 (Va. 1959), is misplaced. In that case, a shelf displaying television sets collapsed and injured a shopper. There was evidence that the shelf had been loose for several weeks, that it had been in use for two and one-half years, and that it had last been inspected one year before the injury. See id. at 128-29.

III

Brock also argues that the district court abused its discretion in not allowing him additional discovery. Specifically, he claims that he did not learn about the independent contractors until January 13, 1998, and therefore was unable to complete discovery by the deadline of January 27, 1998. Brock has not demonstrated, however, how discovery from the independent contractors would have advanced his case against Wal-Mart.

4

Even if he could posit some theory, the fact remains that Brock neither opposed Wal-Mart's motion for summary judgment on the basis of inadequate discovery nor moved for a continuance under Federal Rule of Civil Procedure 56. See Evans v. Technologies Applications & Service Co., 80 F.3d 954, 961 (4th Cir. 1996) ("[T]he nonmoving party cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery or moved for a continuance to permit discovery before the district court ruled" (citation omitted)). Indeed, at the hearing on the motion to reschedule the trial, Brock specifically stated that he was not requesting further discovery.

Because there is no evidence of "clear abuse" of discretion by the district court or a "real possibility" that Brock was prejudiced by its ruling on discovery, we conclude the district court did not abuse its broad discretion in managing discovery. Strag v. Board of Trustees, 55 F.3d 943, 954 (4th Cir. 1995).

The judgment of the district court is

AFFIRMED.

5